1  NICOLA T. HANNA, SBN 130694
      nhanna@gibsondunn.com
2  LAUREN D. FRIEDMAN, SBN 251086
      lfriedman@gibsondunn.com
3  JARED GREENBERG, SBN 300400
      jgreenberg@gibsondunn.com
4  GIBSON, DUNN & CRUTCHER LLP
   3161 Michelson Drive
5  Irvine, CA  92612-4412
   Telephone:  949.451.3800
6  Facsimile:   949.451.4220

7  DEBRA WONG YANG, SBN 123289
      DWongYang@gibsondunn.com
8  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
9  Los Angeles, CA  90071-3197
   Telephone:  213.229.7000
10  Facsimile:   213.229.7520

11  Attorneys for Plaintiffs
   ALLERGAN, INC. and ALLERGAN USA, INC.
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                    WESTERN DIVISION

16  ALLERGAN, INC. and ALLERGAN         CASE NO. 2:16-cv-08403
   USA, INC.,
17                                       **COMPLAINT FOR:**
                    Plaintiffs,
18                                       **(1) FALSE ADVERTISING AND**
          v.                                **UNFAIR COMPETITION UNDER**
19                                           **15 U.S.C. § 1125;**
   AMAZON MEDICA and DOES 1-10,         **(2) UNFAIR COMPETITION UNDER**
20                                           **CAL. BUS. & PROF. CODE**
                    Defendants.              **§ 17200 *ET SEQ.*;**
21                                       **(3) FALSE ADVERTISING UNDER**
                                             **CAL. BUS. & PROF. CODE**
22                                           **§ 17500 *ET SEQ.*;**
                                         **(4) TRADEMARK INFRINGEMENT**
23                                           **UNDER 15 U.S.C. § 1125; AND**
                                         **(5) CALIFORNIA COMMON LAW**
24                                           **TORT OF INTENTIONAL**
                                             **INTERFERENCE WITH**
25                                           **PROSPECTIVE ECONOMIC**
                                             **ADVANTAGE**
26
                                         **DEMAND FOR JURY TRIAL**
27

28

Gibson, Dunn &
Crutcher LLP

Plaintiffs, Allergan, Inc. and Allergan USA, Inc., for their Complaint against Defendants Amazon Medica and Does 1-10, allege upon personal knowledge with respect to themselves and their own acts, and upon information and belief with respect to all other matters, as follows:

## I.

## INTRODUCTION

1.     Amazon Medica is a rogue and unlicensed foreign criminal entity that illegally advertises, imports, sells, and ships prescription medicines to unwitting doctors in the United States.  These doctors, in turn, inject the unlawfully obtained, adulterated and potentially unsafe prescription medicines into unknowing and unsuspecting patients.  Amazon Medica misleads these doctors and endangers patient safety in the pursuit of unearned financial profit.

2.     Amazon Medica operates primarily through its website and, among other things, unlawfully advertises, distributes and sells Allergan-branded medical devices and drugs to United States-based doctors.  Many of these medical devices—although authorized for sale abroad—have not received approval from the United States Food and Drug Administration ("FDA") for use or sale in the United States.  It is illegal for any entity to advertise, distribute, and sell medical devices that require Premarket Approval in the United States without marketing approvals required by the FDA because these devices have not undergone the testing required to meet United States patient safety standards.  Further, all of the Allergan-branded products Amazon Medica sells in the United States are mislabeled and adulterated and, therefore, pose a significant risk to public health.

3.     To further its illicit activities, Amazon Medica goes to great lengths to conceal and mask its physical location and principal place of business.  For example, Amazon Medica claims to be "Great Britain's #1 pharmaceutical wholesaler" and, at various times, claimed to have a physical office in Singapore and a "satellite" office in Los Angeles.  But, the office locations in Singapore and Los Angeles are bogus, and a

1    review of www.Gov.UK, a United Kingdom digital register of companies, shows that

2    there is no registered entity operating under the name "Amazon Medica."  Moreover,

3    Amazon Medica uses sophisticated digital measures to hide its location and limit its

4    online footprint.

5           4.      In order to sell products, Amazon Medica creates a veneer of legitimacy by

6    falsely claiming to United States-based doctors and other health care practitioners that

7    the products it sells are safe, its business model is legal, and its operations comply with

8    government regulations.  This deception includes, among other things, false and

9    misleading advertising on its website and in its marketing emails; an aggressive sales

10   staff that provides false information in response to practitioner inquiries; and the

11   distribution of a fake "legal opinion" that Amazon Medica uses to convince doctors that

12   the products it sells can be sold lawfully in the United States.  Amazon Medica's

13   unlawful marketing practices are designed to and do create false impressions and

14   confusion.  Amazon Medica's marketing is designed to trick buyers into concluding

15   that the adulterated and misbranded products it sells are safe, effective, FDA-approved,

16   and legal, when they are not.

17          5.      Amazon Medica's storage, handling, shipping, and distribution of Allergan

18   products violate federal and state laws, and its operations pose a legitimate threat to

19   patient safety.  And because Amazon Medica sells directly to health care practitioners,

20   patients in the United States are completely unaware that the products being injected or

21   implanted into them are sourced overseas, adulterated or misbranded, and, for several

22   products, not approved for use in the United States.

23          6.      By filing this action, Plaintiffs seek to protect the safety of patients in the

24   United States, and prevent Amazon Medica from causing more harm to Plaintiffs by

25   enjoining Amazon Medica's ongoing unsafe, unlawful, and unfair business practices.

26   ///

27   ///

28   ///

Gibson, Dunn &
Crutcher LLP

## II.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. §§ 1116 and 1121, in that this is a civil action that includes violations of the Lanham Act § 43(a), 15 U.S.C. § 1125.

8.    This Court has subject matter jurisdiction over Plaintiffs' unfair competition law claims (California Business & Professions Code § 17200 *et seq.*), false advertising claims (California Business & Professions Code § 17500), and the California common law tort of intentional interference with prospective economic advantage pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

9.    Venue in the Central District is proper under 28 U.S.C. § 1391.

10.    This Court has personal jurisdiction over Defendants by virtue of Defendants' marketing, offers for sale, sales, and distribution of unapproved Allergan-branded products throughout the State of California and in this District.  Defendants have also placed or helped to place, and are continuing to place, products into the stream of commerce within the United States, within California, and in this District.  It is reasonable to expect that such products will continue to enter and be used by consumers in California and this District.

## III.

## PARTIES

11.    Allergan, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey. Allergan, Inc. also has an office located in Irvine, California.  Allergan, Inc. is the registrant and owner of the trademarks for BOTOX® and the JUVÉDERM® product line.

12.    Allergan USA, Inc. is a corporation and a subsidiary of Allergan, Inc. Allergan USA, Inc. is organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey (the Allergan entities are

Gibson, Dunn &
Crutcher LLP

collectively referred to as "Allergan").  Allergan USA, Inc. markets a portfolio of leading branded pharmaceuticals, devices and biologic products for the central nervous system, eye care, medical aesthetics and dermatology, gastroenterology, women's health, urology and anti-infective therapeutic categories for sale in the United States. Among other products, Allergan USA, Inc. has exclusive rights, within the United States, to market BOTOX®, a drug approved by the FDA to treat several very serious medical conditions, including blepharospasm, cervical dystonia, chronic migraine, overactive bladder, urinary incontinence in persons with spinal cord injury,  multiple sclerosis, and other neurologic conditions, axillary hyperhidrosis, strabismus, upper limb spasticity, and lower limb spasticity; BOTOX® Cosmetic, the only FDA-approved treatment to temporarily improve the appearance of both moderate to severe frown lines and lateral canthal lines in adults; and the JUVÉDERM® product line, a collection of hyaluronic acid fillers that are used to add volume to different areas of the face.

13.    Amazon Medica is an internet-based company selling and advertising unapproved medical devices and drugs through its website and via email to United States-based health care practitioners.  The physical location of Amazon Medica is unknown.  At various times, Amazon Medica has claimed on its website to have physical offices located at 50 Raffles Place, #30.00 Singapore Land Tower, 048623, Singapore, and 445 S. Figueroa Street, Los Angeles, California.  On information and belief, neither of those addresses house any business named Amazon Medica or any business known to be associated with Amazon Medica.

14.    The Amazon Medica domain was created on January 5, 2016.  According to www.scamadviser.com, www.whoismind.com, and www.wa-com.com, www.amazonmedica.com's IP domain, name servers, original listed owner, registrant proxy company, IP Geolocation, and probable website origin indicate physical locations in different countries, including Singapore, the Netherlands, New Zealand, the United States, France, Malaysia, and Luxembourg.

Gibson, Dunn &
Crutcher LLP

15.     Does 1-10 are individuals who own and/or operate Amazon Medica, but whose identities and addresses are currently unknown to Plaintiffs.

## IV.

## FACTUAL ALLEGATIONS

**A.     Federal and State Laws and Regulations Governing Medical Devices and Drugs Are Designed to Protect Patient Safety**

16.     Federal and state laws for medical devices and drugs are designed to safeguard public health.  Without such laws and regulations, patients would not know, or trust, the contents or quality of medical products used to treat them.

17.     The FDA "protect[s] the public health by assuring the safety, efficacy and security of" medical devices and drugs.  The FDA is in charge of approving all new Class III medical devices that require Premarket Approval and monitoring the continued safety of such devices.  Its most stringent device application is a Premarket Approval, which is required before marketing certain Class III medical devices—such as Allergan's JUVÉDERM® devices.  In order to approve a device, the FDA must determine that the Premarket Approval application contains sufficient "valid scientific evidence . . . [that] provide[s] reasonable assurance that the device is safe and effective for its intended use or uses."  *See* 21 C.F.R. § 814.20(b)(3)(vi).

18.     Class III medical devices require rigorous review because they are devices that are "life-supporting or life-sustaining, or for a use which is of substantial importance in preventing impairment of human health, or if the device presents a potential unreasonable risk of illness or injury," or "if insufficient information exists to determine that general controls are sufficient to provide reasonable assurance of its safety and effectiveness."  *See* 21 C.F.R. § 860.3(c)(3).  Due to the significant risks associated with Class III medical devices, Congress and the FDA created this exacting application process to assure the safety and effectiveness of such devices.  For the protection of the public, any Class III medical device that requires Premarket Approval

1  and does not have such approval, is considered adulterated and cannot be marketed.

2  *See* 21 U.S.C. § 351(f).

3        19.    The Food, Drug, and Cosmetic Act ("FDCA") protects patient safety by, in

4  part, prohibiting the introduction of adulterated or misbranded medical devices or

5  drugs.  A drug or device is misbranded if required information is missing from its label,

6  or the information is false or misleading.  *See* 21 U.S.C. § 352; *see* 21 C.F.R. § 201 *et*

7  *seq.*  The FDA ensures labels are continually revised to contain the most up-to-date

8  patient safety information regarding new side effects, dosing, and/or new uses for the

9  drug.  Labels provide warnings and precautions and the FDA's strictest warning is the

10  black-box warning, which calls attention to serious or life-threatening risks.  In 2009,

11  the FDA announced it was requiring a black-box warning on BOTOX® and BOTOX®

12  Cosmetic.  Drugs and medical devices are considered adulterated when not packaged

13  and stored pursuant to the applicable requirements.  *See* 21 U.S.C. § 351(a),(h).  The

14  FDCA also requires an importer of drugs or devices to be registered to ensure patient

15  safety.  *See* 21 U.S.C. § 352(o).

16        20.    State laws and regulations provide further safeguards to protect the public

17  with regard to medical devices and drugs.  For example, California's Sherman Food,

18  Drug, and Cosmetic Law established rigorous oversight of medical devices and drugs

19  sold in California to protect the health of its citizens.  California state law prohibits the

20  sale of unapproved medical devices and drugs, the sale of misbranded and adulterated

21  devices and drugs, false advertising of medical devices and drugs, and requires proper

22  licensing to distribute medical devices and drugs.

23  **B.**    **Allergan Makes Great Efforts to Ensure the Products It Sells Are Safe and**

24          **Effective and Comply with Legal Requirements**

25        21.    For each of its FDA-approved medical devices, Allergan received FDA

26  approval after it filed Premarket Approval applications supported by scientific data

27  demonstrating that the device is safe and effective.  Allergan also filed a New Drug

28  Application for the drugs BOTOX® and BOTOX® Cosmetic, which the FDA

approved after following its thorough review process.  Further, Allergan has exclusive rights to the BOTOX® and JUVÉDERM® trademarks in the United States.

22.     Allergan entities manufacture JUVÉDERM VOLUMA® XC, a Class III medical device approved by the FDA on October 22, 2013.  This device is approved for deep injection for cheek augmentation to correct age-related volume deficit in the mid-face.  The FDA thoroughly reviewed the Premarket Approval application to ensure patient safety and effectiveness, and required adherence to all regulatory restrictions of such devices, ensuring approved labeling, the filing of Annual Reports to assure the continued safety and effectiveness of the device, and reporting of any adverse events associated with the device.  Further, the FDA requires a Premarket Approval supplement for any changes affecting the safety or effectiveness of the approved device, and it requires a detailed report of any correction made to the product to reduce patient risk or remedy a violation which may present a risk to health.  Moreover, Allergan requires that doctors receive training on facial anatomy, appropriate patient selection and assessment, and the proper administration of JUVÉDERM VOLUMA® XC before doctors can purchase the product.

23.     Allergan entities manufacture JUVÉDERM VOLBELLA® XC, a Class III medical device approved by the FDA on May 31, 2016.  This device is approved for lip augmentation and for correction of perioral rhytids.  The safety and effectiveness of the medical device was demonstrated in several clinical trials.  The FDA thoroughly reviewed the Premarket Approval application to ensure patient safety.  The approval required compliance with all regulatory restrictions, ensuring approved labeling, the filing of Annual Reports to assure the continued safety and effectiveness of the device, and reporting of any adverse events associated with the device.  Further, the FDA requires a Premarket Approval supplement or alternate submission before any changes affecting the safety or effectiveness of the device, and it requires a detailed report of any correction made to the product to reduce patient risk.  Similar to JUVÉDERM VOLUMA® XC, Allergan requires that doctors receive training on facial anatomy,

1    appropriate patient selection and assessment, and the proper administration of

2    JUVÉDERM VOLBELLA® XC before doctors can purchase the product.

3        24.    Allergan entities also manufacture JUVÉDERM® Ultra 2, JUVÉDERM®

4    Ultra 3, JUVÉDERM® Ultra 4, and JUVÉDERM® Ultra Smile for sale only outside

5    the United States.  These medical devices are **not** approved by the FDA, and federal

6    law prohibits the marketing and sale of these products in the United States.

7        25.    Allergan entities manufacture BOTOX®, a drug approved by the FDA to

8    treat several very serious medical conditions, including blepharospasm, cervical

9    dystonia, chronic migraine, overactive bladder, urinary incontinence in persons with

10   spinal cord injury, multiple sclerosis, and other neurologic conditions, axillary

11   hyperhidrosis, strabismus, upper limb spasticity, and lower limb spasticity.  Allergan

12   entities also manufacture BOTOX® Cosmetic, the only FDA-approved treatment to

13   temporarily approve the appearance of both moderate to severe frown lines and lateral

14   canthal lines in adults.

15   **C.    Unapproved and Unauthorized Medical Devices and Drugs Create Serious**

16   **       Patient Health Risks**

17       26.    The FDA has recognized the grave danger to public health of importing

18   and administering unapproved, unauthorized, adulterated, or misbranded medical

19   devices and drugs, including unauthorized JUVÉDERM® devices and

20   BOTOX®/BOTOX® Cosmetic.  In fulfilling its mission to protect the public, the FDA

21   has warned doctors and patients of such perils:  "Drugs from rogue wholesale drug

22   distributors may harm your patients and expose them to unknown risks or side effects."

23   *See* U.S. Food & Drug Admin., Know Your Source: Protecting Patients from Unsafe

24   Drugs, http://www.fda.gov/Drugs/ResourcesForYou/HealthProfessionals/

25   ucm389121.htm (last updated May 10, 2016).

26    ///

27    ///

28    ///

Gibson, Dunn &
Crutcher LLP

9

27.    The FDA has issued several public alerts regarding these dangers and sent warning letters to doctors about BOTOX® specifically.[1]  For example, on April 16, 2015, the FDA warned health care practitioners and the public about an unauthorized supplier selling BOTOX®, which was "considered unsafe and should not be used."  *See* U.S. Food & Drug Admin., Counterfeit Version of Botox Found in the United States (Apr. 16, 2015), http://www.fda.gov/Drugs/DrugSafety%20/ucm443217.htm.  The FDA recognized the real dangers of imported unauthorized products from foreign or unlicensed sources:

> Medications purchased from foreign or unlicensed sources may be misbranded, adulterated, counterfeit, contaminated, improperly stored and transported, ineffective, and/or unsafe.  Medical practices that purchase and administer counterfeit, illegal, and unapproved medications from unlicensed or foreign sources are putting patients' *health at risk, as patients may not be getting proper treatment*.  Wholesale drug distributers must be licensed in the states where they conduct business.

*Id.*

28.    The FDA deemed the risk of administering unapproved or unauthorized medical devices and drugs serious enough to, on several occasions, send hundreds of letters to medical practices stating it was "very concerned" that the unlicensed, imported products could "cause harm to patients" because the "products may have unknown or harmful ingredients, and may not have been manufactured, transported or

---

[1]    In August 2015, the FDA announced that two individuals had been sentenced to prison for illegally importing BOTOX® Cosmetic and "jeopardiz[ing] public safety."  *See* U.S. Dept. of Justice, Two Canadians Sentenced for Distributing Counterfeit and Adulterated Botox to Local Doctors (Aug. 4, 2015), http://www.fda.gov/ICECI/CriminalInvestigations/ucm457630.htm.  The United States Department of Justice highlighted the danger of administering adulterated BOTOX® Cosmetic, noting that the unlicensed supplier "did not keep the Botox® Cosmetic at [the required] constant cold temperatures, and sometimes shipped and stored these drugs with no refrigeration or insulation."  *Id.*

Gibson, Dunn &
Crutcher LLP

stored under proper conditions as required by U.S. law and regulations."[2]  *See* U.S. Food & Drug Admin., FDA Issues Letters to Doctors Who May Have Purchased Counterfeit or Unapproved Prescription Drugs, http://www.fda.gov/Drugs/DrugSafety/ DrugIntegrityandSupplyChainSecurity/ucm439169.htm#moredrugs (last updated Sept. 28, 2016); *see* U.S. Food & Drug Admin., Alert: Suspect Versions of Botox Distributed by "Online Botox Pharmacy (July 11, 2013), http://www.fda.gov/ downloads/Drugs/DrugSafety/DrugIntegrityandSupplyChainSecurity/UCM521364.pdf. Further, the "product has not undergone FDA scientific and regulatory review to establish safety, efficacy or therapeutic equivalence to any U.S. approved product. There is no verification of its ingredients, manufacture, or handling." *Id.*  Accordingly, the FDA requested health care practitioners to "cease using" such products to protect the public health.  *Id.*

29.    The FDA continues to protect public health by working to ensure only safe and effective medical devices and drugs are available to the public.  However, the explosive growth of internet commerce has made it more challenging to prevent harmful websites from illegally marketing unapproved and unauthorized medical devices and drugs.

**D.    Amazon Medica's Fraudulent Scheme Threatens Patient Safety by Illegally Importing and Selling Unapproved and Unauthorized Medical Devices and Drugs**

30.    Amazon Medica is a website-operator with a fraudulent business model that sacrifices patient safety in pursuit of unearned profits.  It advertises, imports,

---

[2]  In another letter issued in April, 2015, the FDA warned about the risks of foreign, imported, and unapproved injectable devices, including JUVEDERM® Ultra 2, JUVEDERM® Ultra 3, and JUVEDERM® Ultra 4.  *See* U.S. Food & Drug Admin., ALERT: Your Practice May Have Purchased Unapproved/Uncleared Drugs or Devices, http://www.fda.gov/downloads/Drugs/DrugSafety/ DrugIntegrityandSupply ChainSecurity/UCM446811.pdf (last visited Oct. 25, 2016).  It warned that administering these unapproved, adulterated, and misbranded medical devices puts "patients at risk."  *Id.*  The FDA highlighted that these products have "not undergone scientific and regulatory review by FDA to ensure their safety . . . may have unknown ingredients, improper labeling, or may not have been manufactured, transported or stored under proper conditions."  *Id.*

Gibson, Dunn & Crutcher LLP

markets, sells, and distributes unapproved, unauthorized, adulterated and misbranded Allergan-branded products in the United States, which include non-FDA-approved medical devices:  JUVÉDERM® Ultra 2, JUVÉDERM® Ultra 3, JUVÉDERM® Ultra 4, and JUVÉDERM® Ultra Smile.  It also sells the medical devices JUVÉDERM VOLUMA® XC, JUVÉDERM VOLBELLA® XC, and the drug BOTOX®, without the required authorization and licensing necessary to ensure patient safety.  Unlike Allergan, Amazon Medica does not require that doctors receive training on the appropriate use and administration of JUVÉDERM VOLUMA® XC and JUVÉDERM VOLBELLA® XC, which can lead to adulterated Allergan products being injected into unsuspecting patients who believe they are receiving authentic, safe, effective, and FDA-approved Allergan-branded products.

31.    Amazon Medica purports to buy Allergan-branded products from the United Kingdom and import them into the United States.  Amazon Medica's deceptive marketing campaign, which includes a website, videos, marketing materials, and emails, is designed to trick United States health care practitioners into thinking the products it sells, that are approved for sale in foreign countries, are interchangeable with Allergan's FDA-approved products.  Amazon Medica's con was well planned and executed, and even includes a fraudulent "legal opinion" to support its claim that its business model is legal.  It is understandable that some reasonable health care practitioners would fall victim to this scheme.  However, many of the products are unapproved for sale or use in the United States, and all are adulterated, misbranded, and present risks to patient safety.

### 1.    Amazon Medica Masquerades as a Legitimate Business

32.    Amazon Medica presents itself as a legitimate business with physical offices.  Its marketing materials and website content exude professionalism and legitimacy.  It advertises itself as "Great Britain's #1 Parallel Importer," "fully licensed," and as being comprised of "experienced pharmacists and pharmaceutical wholesalers that are registered to practice in the USA."  It also claims to accept returns

from unsatisfied customers.[3]  It even distributes a slick seven-minute promotional video purporting to explain its business model.  Further, it claims to have an office at 50 Raffles Place, #30.00 Singapore Land Tower, 048623, Singapore, as well as a "satellite office" in the Central District of California located at 445 S. Figueroa Street, Los Angeles, California.  Amazon Medica's claims of legitimacy are illusory, as its business model and practices are illegal and its office locations are nonexistent.

33.    In addition to providing false addresses, Amazon Medica has taken digital steps to mask its physical location.  Its IP domain, name servers, original owner, registrant proxy company, IP Geolocation, and probable website origin indicate physical locations in different countries, including Singapore, the Netherlands, New Zealand, the United States, France, Malaysia, and Luxembourg.  According to www.whoismind.com, as of September 29, 2016, the name servers are in the Netherlands, and the domain IP is in Luxembourg.  According to www.scamadviser.com, as of September 2, 2016, www.amazonmedica.com's registered owner was David Wagenleiter and the technical contact was Luke Simon Walker.  However, it appears these names were recently changed.  As of September 29, 2016, www.whoismind.com and www.scamadviser.com listed the registrant and technical contact as a proxy company in New Zealand.  Further, its IP Geolocation and probable website origin continue to change.  As of September 29, 2016, WebAnalyzer, www.wa-com.com, listed Amazon Medica's IP-based Geolocation in Singapore.  However, days before, on September 16, 2016, its IP-based Geolocation was in Lynn, Massachusetts.  Amazon Medica's probable website origin has also been changing.  As of September 2, 2016, according to www.scamadviser.com, the probable website origin was 41% Malaysia, 26% United States, 26% Netherlands, and 6% Singapore.  However, as of October 6, 2016, the probable website origin was 41% New Zealand,

---

[3]  Allergan properly disposes of all BOTOX® that is returned, as it is not safe to re-introduce a returned cold-chain biologic into the supply chain.  On information and belief, Amazon Medica does not provide return packaging or other means for unsatisfied customers to return the products it sells, and, if it does accept returns, it is unknown if Amazon Medica properly disposes of returned products.

1  31% France, 21% Netherlands, and 7% Luxembourg.  This evidence suggests that

2  Amazon Medica is taking active steps to alter its digital footprint and keep its physical

3  location hidden.

4      **2.    Amazon Medica Makes False and Misleading Statements to**

5          **Deceive Health Care Practitioners into Thinking the Products**

6          **It Sells Are Safe, Effective, FDA-Approved, and Legal**

7      34.    Amazon Medica aggressively engages in deceptive, false, and misleading

8  marketing throughout the United States, California, and in this District.  This false and

9  misleading advertising is designed to convince United States-based health care

10 practitioners that the products it sells are safe, authentic, and FDA-approved, and that

11 its business model is legal.  These false and misleading statements (examples of which

12 are set forth below) are material to the health care practitioner's purchasing decision.

13      a.    **False and Misleading Statements Regarding FDA**

14          **Approval**

15      35.    Amazon Medica falsely advertises that all the products it sells, which

16 include JUVÉDERM® Ultra 2, JUVÉDERM® Ultra 3, JUVÉDERM® Ultra 4, and

17 JUVÉDERM® Ultra Smile, are FDA-approved when, in fact, these products have **no**

18 such FDA approval.  For example, the FAQ section of Amazon Medica's webpage

19 states:  "All products are guaranteed authentic, FDA approved."  Further, its homepage

20 prominently displays the false statement "FDA Approved Products."

21      36.    Amazon Medica's "ABOUT US" webpage states the business was

22 "[f]ormed in response to a growing global demand for genuine FDA approved medical

23 products that have been sourced from FDA approved manufacturers."  That webpage

24 also boasts:  "All pharmaceuticals are FDA approved and manufactured by the official

25 FDA approved manufacturers."  On its products webpage, it markets at least two non-

26 FDA-approved medical devices with the names of FDA-approved devices in

27 parentheses:  "JUVÉDERM ULTRA 2 (ULTRA XC)" and "JUVÉDERM ULTRA 3

28 (ULTRA PLUS XC)."  This false advertisement misleads customers to believe that

these non-FDA-approved medical devices are interchangeable with the FDA-approved devices, which Amazon Medica does not sell.

b.    **False and Misleading Statements That Amazon Medica Follows Regulations and Is Licensed**

37.    Amazon Medica also uses false and misleading statements claiming its business complies with United States regulations. Its marketing materials state "Amazon Medica embraces regulations." Its website states, "Every vial and box of product delivered to the U.S. travels through FDA-monitored customs channels to ensure . . . regulatory compliance." Its homepage states "Amazon Medica embraces the respective international regulatory body's rules and regulations to deliver quality medicines." These statements are false and misleading and have confused, and will continue to confuse, health care providers.

38.    Amazon Medica makes false and misleading statements claiming to be a licensed and registered company. Its "ABOUT US" webpage claims that one of its company's goals is "[m]aintaining licensing and regulations requirements." In emails to prospective customers, it falsely claims that its "business model is legal and fully licensed." Its flyer for a Memorial Day sale advertised that it is "FDA licensed." It also implies it is a registered wholesaler on its "ABOUT US" webpage: "Our comprehensive team consists of experienced pharmacists and pharmaceutical wholesalers that are registered to practice in the USA." However, a search for wholesalers licensed to operate in California shows that Amazon Medica has no such license. Thus, it is not complying with California and federal wholesale distributor licensing requirements. *See* 21 U.S.C. § 331(t); *see* Cal. Bus. & Prof. Code § 4160.

39.    Further, Amazon Medica does not comply with the Drug Supply Chain Security Act ("DSCSA") regulations requiring product tracing, licensing, and annual reporting. *See* 21 U.S.C. § 360eee–1. In 2013, Congress passed the DSCSA with broad bipartisan support to protect consumers from exposure to drugs that may be counterfeit, stolen, contaminated, or otherwise harmful. Under this Act, drug

Gibson, Dunn &
Crutcher LLP

15

wholesalers are required to provide product tracing information to customers, be licensed, and annually report licensure and other information to the FDA. *See* 21 U.S.C. §§ 353(e), 360eee–1. Amazon Medica meets none of these requirements.

40.    Amazon Medica is not even licensed as a wholesaler. Indeed, it claims on its homepage, to be "Great Britain's #1 pharmaceutical wholesaler" and, in its Memorial Day flyer, to be the "UK's #1 Parallel Importer." However, a review of a United Kingdom government digital register of companies reveals Amazon Medica is not a registered business.

c.    **False and Misleading Statements in Online Videos, Voicemail, and Email**

41.    Amazon Medica primarily uses email, telephone, and the internet to aggressively market products to United States health care practitioners. Its sophisticated marketing also includes professional-quality videos designed to deceive United States healthcare practitioners into believing that its business is legitimate and the Allergan-branded products it sells are safe, effective, approved, and legal. Amazon Medica offers a marketing video on its website and distributes the link to potential customers. The video contains false and misleading information, and violates the FDA's requirements regarding product labeling and advertising. *See* 21 U.S.C. § 352; *see* 21 C.F.R. § 202.1.

42.    The online marketing video describes Amazon Medica's business model and misleads its customers into believing that its business complies with FDA regulations. It does this by emphasizing that the "top priority for the FDA . . . is patient safety and authenticity" and states that the BOTOX® it sells is manufactured in an FDA-approved facility. Presumably, Amazon Medica is referring to Allergan entities' manufacturing facilities. While both of these statements are true, Amazon Medica is deceptively attempting to establish its own legitimacy and compliance by referring to the FDA and Allergan and not its own business practices, which include

marketing and distributing unapproved, unauthorized, adulterated and misbranded products.

43.    It further misleads customers that the products it sells comply with FDA regulations and are not adulterated because they allegedly are "shipped through FDA monitored regular custom channels."  Such wording misleads customers into believing that the FDA is inspecting these products.  The video transitions to JUVÉDERM® products and falsely claims the unapproved JUVÉDERM® Ultra 3 is "known in the U.S. as Ultra plus XC."  It falsely claims JUVÉDERM® Ultra 3 is sold in the United States when, in fact, the sale of the product in the United States is prohibited.  The video then misleads customers by claiming United States pharmaceutical sales representatives "have little or zero knowledge of the FD&C Act"—the very act that outlaws Amazon Medica's business model.

44.    The video also includes a section on "misconceptions and myths," which propagates misleading and false information:

**Myth #1**: You will lose your medical license and be criminally prosecuted for purchasing a UK labeled FDA approved product, manufactured in the FDA approved facility.

**Answer**: There has never been a case of a US licensed physician being reprimanded for using a UK packaged authentic Allergan Botox. Regardless of packaging, the Allergan Botox is FDA approved and manufactured in the official FDA approved facility.

**Myth #2**: You will have problems with your malpractice insurance.

**Answer**: The manufacturer of a pharmaceutical product is responsible for all malpractice related concerns. . . .

**Myth #3**: US physicians must use US packaged Allergan Botox

**Answer**: The visual appearance of US or UK Allergan Botox packaging is not of primary concern to the FDA . . . .

Gibson, Dunn &
Crutcher LLP

17

45.    Amazon Medica's answers to these three "Myths" are false, misleading, and create confusion among health care providers.  The FDA and Department of Justice ("DOJ") have repeatedly taken action against physicians administering misbranded and fraudulent BOTOX® from unlicensed sources.  The FDA has sent thousands of warning letters and some physicians have been sentenced to prison.  Additionally, Amazon Medica's claim that a physician will be insulated from malpractice claims despite purchasing, selling, and administering unapproved, misbranded, and adulterated Allergan-branded products is preposterous.  *See* Cal. Health & Safety Code §§ 111295, 111440; *see also* 21 U.S.C. §§ 331, 360eee–1.  Further, under the DSCSA, all health care providers who dispense or administer prescription drugs to patients are required to purchase their prescription drug products only from authorized trading partners licensed by or registered with the state or federal government.  *See* 21 U.S.C. § 360eee–1.  Finally, the proper packaging of all pharmaceuticals is indeed a primary concern for the FDA and DOJ.  In a DOJ press release announcing a prison sentence for the co-founder of an unlicensed wholesale drug distributer, it highlighted the importance of proper labels, stating that many drugs "were required to carry a FDA 'black box' warning, which indicates that a drug carries a significant risk of serious or life-threatening adverse effects."  *See*  U.S. Dept. of Justice, Co-Leader of Illegal Drug Company Gallant Pharma Sentenced to 3 Years (March 7, 2014), http://www.fda.gov/ICECI/CriminalInvestigations/ucm391732.htm.  Further, the FDCA mandates proper labeling of drugs for sale in the United States.  *See* 21 U.S.C. § 352.

46.    In another example of misleading marketing, on or about September 14, 2016, an Amazon Medica saleswoman left a voicemail for a United States dermatology clinic stating "for the next two days we are running an Allergan BOTOX® promotion."  The saleswoman implied she was calling from Allergan, but left Amazon Medica's phone number.

47.    In another example of false advertising, a person using the name "Vincent Marino," of Amazon Medica, emailed a United States health care practitioner on or

about April 13, 2016, and falsely claimed: "All product warranties and insurance policies still apply when purchasing through Amazon Medica." Each of these statements are false and misleading as Amazon Medica is not associated with Allergan and Allergan does not warrant or insure products illegally purchased from Amazon Medica.

### d.    False and Misleading Statements Regarding the Legality of Its Business Model

48.    In emails to potential clients, Amazon Medica has stated that, "[o]ur business model is legal," that "parallel imports"—products imported from another country without the permission of the intellectual property owner—are legal under certain circumstances, which include "the product must be FDA approved" and it "may not be adulterated or misbranded." Amazon Medica uses this unsupported justification to conclude that its business model is legal. However, Amazon Medica fails its own purported legal standard because many of the products it sells are **not** FDA-approved, and all of the products are both adulterated and misbranded.

### e.    Amazon Medica Distributes a Fabricated "Legal Opinion" to Deceive Potential Customers

49.    Amazon Medica is distributing an undated and unsigned fake legal opinion to deceive doctors into believing that its business model is legal. On or about April 8, 2016, Vincent Marino, who identified himself as being associated with Amazon Medica, sent a marketing email to Dr. T.C. of Ventura County.[4] When Dr. T.C. questioned its business model, Mr. Marino sent him a "legal opinion" in an effort to make Dr. T.C. comfortable buying from Amazon Medica.

50.    The "legal opinion" concluded that imported BOTOX® would not violate the FDCA if it was identical, manufactured in Allergan's FDA-approved facility, and

---

[4]   To ensure the privacy of physicians who have been targeted by Amazon Medica, they are referred to herein by initials only.

1    had "not been altered in any way."  The letter cited a 2003 quote from the FDA's
2    Director of the Office of Compliance as support for its conclusion:

3        In order to ensure compliance with the Act when they are involved in
4        shipping prescription drugs to consumers in the U.S., businesses and
5        individuals must ensure, among other things, that they only sell FDA-
6        approved drugs that are made outside of the U.S. and that comply with the
7        FDA approval in all respects, including manufacturing location,
8        formulation, source and specifications of active ingredients, processing
9        methods, manufacturing controls, container/closure system, and
10       appearance.  21 C.F.R. 314.50.  They must also ensure that each drug
11       meets all U.S. labeling requirements, including that it bears the FDA-
12       approved labeling.  21 C.F.R. 201.100(c)(2) . . . .

13   The "legal opinion" claimed this FDA statement "implies that if all of the above
14   conditions were met, the drug shipment to consumers would not necessarily be
15   in violation of the FD & C Act."  However, this "legal opinion" failed to include
16   the next two lines in the FDA letter:

17       Practically speaking, it is extremely unlikely that a pharmacy could ensure
18       that all of the applicable legal requirements are met.  Consequently,
19       almost every time an individual or business ships a prescription drug from
20       Canada to a U.S. consumer, the individual or business shipping the drug
21       violates the FD&C Act.

22   Regardless, Amazon Medica does not meet these criteria because the BOTOX®
23   it sells does not meet "U.S. labeling requirements, including . . .  the FDA-
24   approved labeling."  In addition, the BOTOX® Amazon Medica sells is
25   adulterated and misbranded according to the FDCA.  *See* 21 U.S.C. §§ 351, 352.
26   Further, the letter only discusses BOTOX® and federal law, and a potential
27   customer would mistakenly assume it applies to JUVÉDERM® products and all
28   applicable state laws.

Gibson, Dunn &
Crutcher LLP

51.    The "legal opinion" is not only wrong, it is fraudulent.  The purported author of the "legal opinion," an attorney located in Chicago, has denied representing Amazon Medica.  The attorney claims the letter was "extracted and edited" from a document he prepared in 2009, and the content was "extremely outdated."  The attorney subsequently has asked Amazon Medica to cease distributing the fraudulent "legal opinion."  The "legal opinion," like Amazon Medica's business, is a sham.

### 3.    Amazon Medica Markets and Advertises Products to Doctors Within the Central District of California

52.    Amazon Medica targets United States health care practitioners, including those located in the Central District.  For example, on April 13, 2016, Vincent Marino of Amazon Medica, sent Doctor S.T., of Los Angeles County, a marketing email offering "the possibility of your practice saving 40% on all your cosmetic injectable and dermal filler purchases."  Mr. Marino falsely claimed that Amazon Medica offered "only authentic product[s]," that the "warranties and insurance policies still apply," and that the Amazon Medica's "business model is legal and fully licensed."

53.    In another example, on April 8, 2016, Vincent Marino sent a similar marketing email to Dr. T.C. of Ventura County.  Mr. Marino stated that Allergan's parent company "wouldn't care much" if it knew Dr. T.C. bought Allergan-branded products from Amazon Medica, which is why "they continue to do business with us after 7 years and 1,000 U.S. physicians switching over."  In addition, Mr. Marino stated that Amazon Medica works "with other physicians in the 805 area code."  When Dr. T.C. questioned the legality of Amazon Medica's business, Mr. Marino explained the business model was legal and offered to send him a "legal opinion."

### 4.    Amazon Medica Sells Adulterated and Misbranded Medical Devices and Drugs Outside of the Licensed Supply Chain That May Be Dangerous and Are Used on Unsuspecting Patients

54.    Amazon Medica sells misbranded and adulterated medical devices and drugs to health care practitioners throughout the United States, California, and this

District.  In so doing, Amazon Medica is placing patients' safety at risk.  Patients receiving medical treatment through such products no doubt believe they are receiving safe, effective, authentic, authorized, properly stored, FDA-approved products—they are not.

55.     The products Amazon Medica sells contain packaging and labels that were not approved by the FDA.  Accordingly, these products are misbranded.  Amazon Medica's own advertising admits these products do not have United States packaging and labels, but contain packaging developed for another country.  These misbranded products create confusion among health care practitioners and increase the risk to patients.  For example, BOTOX® packaging in the United Kingdom does not include the "black box" warning the FDA deemed essential for patient safety in the United States.

### a.     Allergan Products Sold by Amazon Medica Are Misbranded

56.     Federal law deems medical devices and drugs to be misbranded if they do not bear the required, FDA-approved labels and have the proper packaging.  *See* 21 U.S.C. § 352.  These labels provide detailed instructions, warnings, and product information the federal government has determined to be essential for patient safety.  The products Amazon Medica sells are missing the required FDA-approved labels.

57.     The products are also misbranded because Amazon Medica is acting as a wholesale distributer without the required licenses and is not providing its customers with required documentation.  Misbranded products considerably increase the risk of incorrect administration, which amplifies serious health risks for patients using the products.

### b.     Allergan Products Sold by Amazon Medica Are Adulterated

58.     In addition to being misbranded, the medical devices and drugs Amazon Medica sells are adulterated.  A Class III medical device is adulterated if it lacks a

Gibson, Dunn & Crutcher LLP

22

1   required Premarket Approval, which is based on sufficient scientific evidence and data

2   for the FDA to deem the device safe and effective.  *See* § 351(f).  JUVÉDERM®

3   Ultra 2, JUVÉDERM® Ultra 3, JUVÉDERM® Ultra 4, and JUVÉDERM® Ultra Smile

4   have not received required Premarket Approval and are not FDA-approved.  Thus,

5   these medical devices are adulterated.

6        59.    Medical devices and drugs are also considered adulterated when they are

7   not stored and packed in conformity with applicable requirements.  Further, a device or

8   drug is deemed adulterated when it is stored in a manner that may have rendered it

9   injurious to health.  *See* § 351(a),(h).  Allergan's BOTOX® has restrictions on storage

10  temperature.  Allergan goes to great lengths to make certain that from the time of

11  manufacture until the time the product reaches its customers, the temperature of

12  BOTOX® is properly maintained in special, validated temperature-controlled

13  containers.   Maintaining the temperature is crucial for ensuring that the product is both

14  safe and effective at the time it is administered to patients.

15       60.    Although Amazon Medica claims it ships products at the proper

16  temperature, its claims, as demonstrated herein, cannot be trusted.  In fact, it makes this

17  very claim within the same sentence as four other false statements:  "All products are

18  guaranteed authentic, FDA approved, and shipped at the appropriate temperature, can

19  be verified by the client and with Allergan Pharmaceuticals Ireland."  Not one of these

20  claims is true.  There is no evidence that Amazon Medica properly ships Allergan-

21  branded products, and Allergan has never validated Amazon Medica's storage and

22  shipping configurations.  On information and belief, Amazon Medica does not properly

23  store and ship Allergan-branded products.  Accordingly, these products are adulterated

24  and a risk to patient safety.

25       61.    As a result of Defendants' illegal conduct, Allergan, Inc. and Allergan

26  USA, Inc. have suffered, suffer, and will continue to suffer irreparable harm to their

27  reputation, business, and goodwill.  Further, Defendants' illegal operations pose a

28  significant risk to thousands of unsuspecting patients, as well as Plaintiffs.

# V.

## FIRST CAUSE OF ACTION

### (False Advertising and Unfair Competition

### Lanham Act § 43(a), 15 U.S.C. § 1125)

62.    Plaintiffs incorporate and reallege each and every allegation contained in the foregoing paragraphs of this Complaint, as though fully set forth herein.

63.    In its marketing, advertising, importing, distributing, and selling of non-FDA-approved Allergan-branded products and unauthorized Allergan-branded products, Amazon Medica has engaged in, and continues to engage in, false advertising and unfair competition in violation of Section 43(a) of the Lanham Act.  Specifically, but not inclusively:

a.    Amazon Medica misleads customers and falsely advertises that the Allergan-branded products it sells are FDA-approved;

b.    Amazon Medica misleads customers, through false advertising and a fraudulent "legal opinion," into believing its business model is legitimate and it follows United States laws and regulations;

c.    Amazon Medica misleads customers into believing its business has the appropriate licenses that provide oversight to ensure patient safety;

d.    Amazon Medica misleads customers into believing the Allergan-branded products it sells are safe and not adulterated;

e.    Amazon Medica misleads and creates confusion among health care practitioners by providing mislabeled Allergan-branded products;

f.    Amazon Medica misleads customers into believing the Allergan-branded products it sells are under warranty; and

g.    Amazon Medica misleads customers as to its physical location by providing phony office addresses in California and Singapore.

Gibson, Dunn &
Crutcher LLP

24

64.     On information and belief, United States health care practitioners have been and continue to be misled by Defendants' misrepresentations that the Allergan-branded products it sells are safe, effective, authentic, legal, genuine, authorized, and/or FDA-approved.

65.     Defendants' false and misleading advertising is willful, deliberate, in bad faith, and it risks patient safety.  It was and continues to be circulated throughout the United States in interstate commerce.  These misleading statements have likely deceived and have the tendency to deceive a substantial segment of the audience for this advertising.  The deception is material and will likely influence United States health care practitioners' purchasing decisions, and Plaintiffs have been injured by Defendants' false and misleading statements.  Thus, Defendants have and continue to violate 15 U.S.C. § 1125(a)(1).

66.     As a direct result of Defendants' false advertising and unfair competition, Plaintiffs have suffered, suffer, and will continue to suffer irreparable harm to their reputation, business, and goodwill.  Further, Defendants' illegal operations pose a significant risk to thousands of unknowing patients, as well as Plaintiffs.

67.     Defendants' conduct caused and will continue to cause irreparable harm, for which Allergan, Inc. and Allergan USA, Inc. have no adequate remedy at law.  As such, Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116.

## VI.

## SECOND CAUSE OF ACTION

## (California Unfair Competition Law ("UCL"))

## Cal. Bus. & Prof. Code § 17200 *et seq.*)

68.     Plaintiffs incorporate and reallege each and every allegation contained in the foregoing paragraphs of this Complaint, as though fully set forth herein.

69.     In its marketing, importing, distributing, and selling of non-FDA-approved Allergan-branded products and unauthorized Allergan-branded products, Amazon Medica has engaged in, and continues to engage in, unlawful, unfair, and/or fraudulent

Gibson, Dunn & Crutcher LLP

25

business acts, as well as unfair, deceptive, untrue, or misleading advertising in violation of the State of California Business & Professions Code § 17200 *et seq.*

70.    On information and belief, Defendants' unlawful actions include violations of California statutory law, specifically, but not inclusively:

        a.    selling unapproved medical devices;

        b.    selling misbranded drugs and medical devices;

        c.    selling adulterated drugs and medical devices;

        d.    false and misleading advertising of drugs and medical devices;

        e.    advertising adulterated drugs and medical devices;

        f.    advertising misbranded drugs and devices; and

        g.    selling drugs and devices outside of the licensed supply chain.

71.    Defendants' unlawful actions include violations of Federal law, specifically, but not inclusively:

        a.    violations of multiples sections of the FDCA for introducing adulterated medical devices and drugs into interstate commerce, introducing misbranded medical devices and drugs into interstate commerce, not providing customers with required transaction statements, and acting as a wholesaler without a license;

        b.    violations of the Lanham Act § 43(a), for false advertising and unfair competition; and

        c.    violations of the Lanham Act § 43(a), for trademark infringement.

72.    On information and belief, Defendants made, disseminated, and advertised false and misleading statements in California, which are likely to create false impressions and confusion regarding safety, efficacy, legality, and FDA approval status of the products.

73.    Defendants illegally imported and sold medical products not approved for sale in California or the United States.

Gibson, Dunn & Crutcher LLP

74.    As a direct result of Defendants' unfair competition, as described herein, Plaintiffs have suffered, suffer, and will continue to suffer economic injury, as well as irreparable harm to their reputation, business, and goodwill.  Further, Defendants' illegal operations pose a significant risk to thousands of unknowing patients, as well as Plaintiffs.

75.    Defendants' conduct, as described herein, has injured Allergan, Inc. and Allergan USA, Inc. and will continue to cause injury for which Plaintiffs have no adequate remedy at law.  As such, Allergan, Inc. and Allergan USA, Inc. are entitled to a permanent injunction prohibiting Defendants' wrongful conduct.

## VII.

### THIRD CAUSE OF ACTION

### (California False Advertising Law, Common Law,
### and Cal. Bus. & Prof. Code § 17500 *et seq.*)

76.    Plaintiffs incorporate and reallege each and every allegation contained in the foregoing paragraphs of this Complaint, as though fully set forth herein.

77.    In its marketing and advertising of non-FDA-approved Allergan-branded products and unauthorized Allergan-branded products, Amazon Medica has engaged in, and continues to engage in, untrue or misleading advertising in violation of the State of California Business & Professions Code § 17500 *et seq.*

78.    Defendants, as described herein, made and continue to make false or misleading advertisements that all products Amazon Medica sells are FDA-approved, that Amazon Medica follows laws and regulations, that its business model is legal, that it has the appropriate licenses, that the products it sells are safe and not adulterated, that the products are properly shipped and stored, that the products are under warranty, and that it has an office located at 50 Raffles Place, #30.00 Singapore Land Tower, 048623, Singapore, and a satellite office located at 445 S. Figueroa Street, Los Angeles, California.

Gibson, Dunn &
Crutcher LLP

27

79.    On information and belief, United States health care practitioners are misled by Defendants' false claims and misrepresentations and may be deceived to believe that the products Amazon Medica sells are safe, effective, legal, and FDA-approved.

80.    Defendants knew or should have known that their statements were false or likely to mislead some United States health care practitioners.

81.    As a direct result of Defendants' false advertising, as described herein, Plaintiffs have suffered, suffer, and will continue to suffer economic injury, as well as irreparable harm to their reputation, business, and goodwill.  Further, Defendants' illegal operations pose a significant risk to thousands of unsuspecting patients, as well as Plaintiffs.

82.    Defendants' conduct, as described herein, has injured Allergan, Inc. and Allergan USA, Inc., and will continue to cause injury for which Plaintiffs have no adequate remedy at law.  As such, Allergan, Inc. and Allergan USA, Inc. are entitled to a permanent injunction prohibiting Defendants' wrongful conduct.

## VIII.

## FOURTH CAUSE OF ACTION

## (Trademark Infringement, Lanham Act § 43(a)

## 15 U.S.C. §§ 1114, 1125)

83.    Plaintiffs incorporate and reallege each and every allegation contained in the foregoing paragraphs of this Complaint, as though fully set forth herein.

84.    Amazon Medica sells Allergan-branded products that are manufactured overseas, bear a valid United States trademark, and are imported without the consent of the United States trademark holder, Allergan, Inc.  These products are materially different than the genuine products for sale in the United States, and as such constitute trademark infringement under the Lanham Act § 43(a).

85.    The Allergan-branded products Amazon Medica illegally imports into the United States are materially different due to the improper labeling, packaging,

marketing, and quality control methods, such as proper storage and shipping temperatures.  On information and belief, these material differences have caused and will likely continue to cause confusion among United States health care providers and patients who believe they received, or will receive, genuine authorized Allergan-branded products.

86.    Most importantly, the materially different medical devices and drugs have the potential to cause significant patient harm.

87.    As a direct result of Defendants' trademark infringement, as described herein, Plaintiffs have suffered, suffer, and will continue to suffer irreparable harm to their reputation, business, and goodwill.  Further, Defendants' illegal operations pose a significant risk to thousands of unsuspecting patients, as well as Plaintiffs.

88.    Defendants' conduct, as described herein, has injured Allergan, Inc. and Allergan USA, Inc. and will continue to cause injury for which Plaintiffs have no adequate remedy at law.  As such, Allergan, Inc. and Allergan USA, Inc. are entitled to a permanent injunction prohibiting Defendants' wrongful conduct.

## IX.

## FIFTH CAUSE OF ACTION

## (California Common Law Tort of Intentional Interference with Prospective Economic Advantage)

89.    Plaintiffs incorporate and reallege each and every allegation contained in the foregoing paragraphs of this Complaint, as though fully set forth herein.

90.    Amazon Medica has diverted business from Allergan, Inc. and Allergan USA, Inc. by improper means, as described herein, not within the boundaries of fair competition.

91.    On information and belief, Defendants targeted United States health care practitioners it knew had a relationship with Allergan.  Through false and misleading advertising, Defendants convinced some health care practitioners that the products Amazon Medica sells were FDA-approved, safe, effective, legal and interchangeable

1  with authorized Allergan-branded products.  Accordingly, some health care
2  practitioners bought products from Amazon Medica rather than Plaintiffs.

3      92.    Defendants' conduct, as described herein, has injured Allergan, Inc. and
4  Allergan USA, Inc. and will continue to cause injury for which Plaintiffs have no
5  adequate remedy at law.  As such, Allergan, Inc. and Allergan USA, Inc. are entitled to
6  a permanent injunction prohibiting Defendants' wrongful conduct.

7                                         **X.**

8                          **PRAYER FOR RELIEF**

9      WHEREFORE, Allergan, Inc. and Allergan USA, Inc. respectfully request that
10  this Court enter judgment in their favor and against Defendants and grant the following
11  relief:

12      A.    Defendants, their officers, agents, servants, employees, confederates, and
13  any persons in active concert or participation with them, including, but not limited to,
14  domain name registrars, domain name registries, internet service providers, shipping
15  carriers, credit card companies, credit card processors, banks, and other third parties be
16  preliminarily and permanently enjoined from:

17          1.    selling, importing, and distributing misbranded and adulterated
18                medical devices and drugs to the United States;

19          2.    listing unapproved, Allergan-branded products for sale on their
20                website, and in their advertising and marketing material;

21          3.    directly or indirectly engaging in false or misleading advertising of
22                Allergan-branded products;

23          4.    infringing any of Allergan's trademarks or damaging its goodwill;
24                and

25          5.    otherwise competing unfairly with Allergan in any manner and
26                risking patient safety.

27      B.    A judgment that Defendants engaged in unfair competition and false
28  advertising in violation of 15 U.S.C. § 1125;

Gibson, Dunn &
Crutcher LLP

30

C.    A judgment that Defendants engaged in unfair competition and false or misleading advertising in violation California Business & Professions Code § 17200 *et seq.*;

D.    A judgment that Defendants engaged in false advertising in violation of California Business & Professions Code § 17500 *et seq.*;

E.    A judgment that Defendants infringed Allergan, Inc.'s JUVÉDERM® and BOTOX® trademarks in violation of 15 U.S.C. §§ 1114, 1125;

F.    A judgment that Defendants diverted business from Allergan, Inc. and Allergan USA, Inc. by improper means not within the boundaries of fair competition and committed the California common law tort of intentional interference with prospective economic advantage;

G.    A preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116(a), enjoining all Defendants from any further act of unfair competition, false or misleading advertising, and/or trademark infringement;

H.    A preliminary and permanent injunction, pursuant to California Business & Professions Code § 17203, enjoining all Defendants from any further act of unfair competition and false or misleading advertising;

I.    A preliminary and permanent injunction, pursuant to California Business & Professions Code § 17535, enjoining all Defendants from any further act of false or misleading advertising;

J.    A preliminary and permanent injunction, pursuant to the California common law tort of intentional interference with prospective economic advantage, enjoining all Defendants from diverting business from Allergan, Inc. and Allergan USA, Inc. by improper means not within the boundaries of fair competition; and

///
///
///
///

Gibson, Dunn &
Crutcher LLP

1        K.      Such additional and further relief which the Court deems just and proper.

2

3    Dated:  November 10, 2016

4                                          DEBRA WONG YANG
                                           NICOLA T. HANNA
5                                          LAUREN D. FRIEDMAN
                                           JARED GREENBERG
6                                          GIBSON, DUNN & CRUTCHER LLP

7
                                           By: _/s/ Nicola T. Hanna_____
8                                                 Nicola Hanna

9                                          Attorneys for Plaintiffs ALLERGAN, INC. and
                                           ALLERGAN USA, INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable, pursuant to Federal Rule of Civil Procedure 38.

Dated: November 10, 2016

DEBRA WONG YANG
NICOLA T. HANNA
LAUREN D. FRIEDMAN
JARED GREENBERG
GIBSON, DUNN & CRUTCHER LLP

By: */s/ Nicola T. Hanna*
                    Nicola Hanna

Attorneys for Plaintiffs ALLERGAN, INC. and ALLERGAN USA, INC.

102181924.17

Gibson, Dunn &
Crutcher LLP