DEBRA WONG YANG, SBN 123289
  DWongYang@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

JARED GREENBERG, SBN 300400
  JGreenberg@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO 80202-2642
Telephone:  303.298.5700
Facsimile:   303.298.5907

Attorneys for Plaintiffs
ALLERGAN, INC. and ALLERGAN USA, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ALLERGAN, INC. and ALLERGAN USA, INC.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>AMAZON MEDICA and DOES 1-10,<br><br>                    Defendants. | CASE NO. 2:16−cv−08403 CBM (SSx)<br><br>**PLAINTIFFS ALLERGAN, INC. AND ALLERGAN USA, INC.'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of Jared Greenberg and Proposed Order Granting Motion for Default Judgment and Permanent Injunction filed concurrently herewith]<br><br>**Hearing:**<br>Date:         July 31, 2018<br>Time:        10:00 a.m.<br>Place:        Courtroom 8B, 8th Floor<br>Judge:       Hon. Consuelo B. Marshall |

Gibson, Dunn &
Crutcher LLP

---

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION; MEMORANDUM OF
POINTS AND AUTHORITIES

**TO THE COURT, THE PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT at 10:00 a.m. on July 31, 2018, or soon thereafter as counsel may be heard, in the courtroom of the Honorable Consuelo B. Marshall, located at 350 West 1st Street, Los Angeles, California, Plaintiffs Allergan, Inc. and Allergan USA, Inc. will and hereby do move for entry of Default Judgment and a Permanent Injunction against defendant Amazon Medica.

This motion is made on the ground that the defendant is not an infant or incompetent person, and failed to respond timely and properly to the Complaint, and on March 19, 2018 the Clerk of this Court entered default against Amazon Medica. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in Support of Its Motion for Default Judgment and Permanent Injunction, and the declaration of Jared Greenberg attached hereto.

Dated:  June 21, 2018

DEBRA WONG YANG
JARED GREENBERG
GIBSON, DUNN & CRUTCHER LLP

By:   */s/ Jared Greenberg*
      Jared Greenberg

Attorneys for Plaintiffs ALLERGAN, INC. and ALLERGAN USA, INC.

# TABLE OF CONTENTS

Page

I.   FACTUAL BACKGROUND ................................................................. 1

    A.   Allergan Markets and Manufactures Drugs and Medical Devices ............ 2

    B.   Amazon Medica Is an Unlicensed Foreign Criminal Entity That Illegally Advertises, Imports, and Sells Prescription Medicines to Unwitting Doctors in the United States ....................................................... 3

        1.   Amazon Medica Masquerades as a Legitimate Business ............... 3

        2.   Amazon Medica Makes False and Misleading Statements to Deceive Health Care Practitioners into Thinking the Products It Sells Are FDA-Approved and Legal ............................................. 4

        3.   Amazon Medica Markets and Advertises Products to Doctors Within the Central District of California .......................................... 6

        4.   Amazon Medica Uses Third Parties to Ship Adulterated and Misbranded Medical Devices and Drugs to the United States ........ 6

        5.   Amazon Medica Sells Adulterated and Misbranded Medical Devices and Drugs Outside of the Licensed Supply Chain That May Be Dangerous and Are Used on Unsuspecting Patients ................................................................................ 7

II.  DISCUSSION ................................................................................. 9

    A.   Allergan Has Satisfied Local Rule 55-1 .................................................. 9

    B.   Ninth Circuit *Eitel* Factors Strongly Favor Entering Default Judgment .......................................................................................... 9

        1.   Possibility of Prejudice to Allergan .............................................. 10

        2.   Substantive Merits and Sufficiency of the Complaint .................. 10

        3.   Amount at Stake ........................................................................... 14

        4.   Possibility of Dispute .................................................................... 15

        5.   Possibility of Excusable Neglect .................................................. 15

        6.   Policy for Deciding Cases on the Merits ...................................... 15

        7.   Conclusion as to the *Eitel* Factors .............................................. 16

    C.   This Court Should Permanently Enjoin Defendant from Future Infringement of Allergan's Trademarks, Further Acts of Unfair Competition, and Further Acts of False or Misleading Advertising ........ 16

        1.   A Permanent Injunction Is an Available Equitable Remedy ........ 16

i

Gibson, Dunn & Crutcher LLP

# TABLE OF CONTENTS
(continued)

Page

    *2.*    The *eBay* Test Is Satisfied ............................................................ 18

III.    CONCLUSION ..................................................................................... 20

Gibson, Dunn & Crutcher LLP

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amini Innovation Corp. v. KTY Int'l Mktg.*,
  768 F. Supp. 2d 1049 (C.D. Cal. 2011) .................................................. 16

*AT&T Corp. v. Vision One Sec. Sys.*,
  No. 95-0565-IEG (BTM), 1995 WL 476251 (S.D. Cal. Jul. 27, 1995) .................. 19

*Bd. of Trs. of Sheet Metal Workers v. Moak*,
  No. C 11-4620 CW, 2012 WL 5379565 (N.D. Cal. Oct. 31, 2012) ...................... 10

*Car-Freshner Corp. v. Valio, LLC*,
  No. 2:14-cv-01471-RFB-GWF, 2016 WL 7246073 (D. Nev. Dec. 15,
  2016) ............................................................................. 19

*Century 21 Real Estate Corp. v. Sandlin*,
  846 F.2d 1175 (9th Cir. 1998) .................................................... 17

*China Cent. Television v. Create New Tech. (Hk) Ltd.*,
  No. CV 15-01869 MMM AJWX, 2016 WL 6871281 (C.D. Cal. Apr.
  4, 2016) .......................................................................... 18

*Craigslist, Inc. v. Naturemarket, Inc.*,
  694 F. Supp. 2d 1039 (N.D. Cal. 2010) ............................................ 15

*eBay, Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006)............................................................... 18

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986) ................................................ 9, 14, 15

*Geddes v. United Fin. Grp.*,
  559 F.2d 557 (9th Cir. 1977) ..................................................... 10

*Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*,
  559 F.3d 985 (9th Cir. 2009) ..................................................... 19

*Jackson v. Sturkie*,
  255 F. Supp. 2d 1096 (N.D. Cal. 2003)............................................. 17

*Landstar Ranger, Inc. v. Parth Enters., Inc.*,
  725 F. Supp. 2d 916 (C.D. Cal. 2010)........................................ 10, 15, 16

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Otter Prods., LLC v. Berrios*,
   No. CV 13-4384-RSWL, 2013 WL 5575070 (C.D. Cal. Oct. 10, 2013) ................ 18

*PepsiCo, Inc. v. Cal. Sec. Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002) .................................................. 10, 14, 15, 16

*Reno Air Racing Ass'n. Inc. v. McCord*,
   452 F.3d 1126 (9th Cir. 2006) ......................................................................... 18

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*,
   240 F.3d 832 (9th Cir. 2001) .......................................................................... 18

*Wecosign, Inc. v. IFG Holdings, Inc.*,
   845 F. Supp. 2d 1072 (C.D. Cal. 2012) ...................................................... 15, 19

**Statutes**

15 U.S.C. § 1114 ..................................................................................................... 12

15 U.S.C. § 1116 ..................................................................................................... 17

15 U.S.C. § 1125 ............................................................................................... 11, 12

21 U.S.C. § 331 ......................................................................................................... 3

21 U.S.C. § 351 ......................................................................................... 3, 5, 7, 8

21 U.S.C. § 352 ......................................................................................................... 5

CAL. BUS. & PROF. CODE § 17200 ................................................................... 12, 13

CAL. BUS. & PROF. CODE § 17203 ......................................................................... 17

CAL. BUS. & PROF. CODE § 17500 ......................................................................... 13

CAL. BUS. & PROF. CODE § 17535 ......................................................................... 17

**Rules**

Fed. R. Civ. P. 8 ..................................................................................................... 10

Fed. R. Civ. P. 55 ..................................................................................................... 9

Gibson, Dunn &
Crutcher LLP

iv

# TABLE OF AUTHORITIES
(continued)

Page(s)

**Treatises**

40 Cal. Jur. 3d Interference with Economic Advantage § 9 ............................... 14

40 Cal. Jur. 3d Interference with Economic Advantage § 45 ........................... 17

Gibson, Dunn &
Crutcher LLP

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

3
4
5
6

Plaintiffs Allergan, Inc. and Allergan USA, Inc. (collectively "Allergan") respectfully submit this Memorandum of Points and Authorities in support of their Motion for Default Judgment and Permanent Injunction against defendant Amazon Medica.

7
8
9

Defendant was served via alternative service per the order of this Court (Dkt. No. 12) on December 12, 2016 (Dkt. No 15).  Defendant failed to answer, plead, or otherwise respond to the Complaint.

10
11
12

On March 19, 2018, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the Clerk entered the default of Amazon Medica (Dkt. No. 32) for failure to answer or otherwise defend Allergan's Complaint for:

13

(1) false advertising and unfair competition under 15 U.S.C. § 1125;

14

(2) unfair competition under CAL. BUS. & PROF. CODE § 17200 *et seq.*;

15

(3) false advertising under CAL. BUS. & PROF. CODE § 17500 *et seq.*;

16

(4) trademark infringement under 15 U.S.C. § 1125; and

17
18

(5) California common law tort of intentional interference with prospective economic advantage.

19
20
21
22

Pursuant to Rule 55(b)(2), Allergan seeks entry of a default judgment against Amazon Medica.  Allergan also seeks entry of a permanent injunction to prevent Defendant from further acts of unfair competition, false or misleading advertising, and/or trademark infringement.

23

## I.    FACTUAL BACKGROUND

24
25
26
27
28

Amazon Medica has caused doctors to inject unlawfully obtained, potentially unsafe Allergan-branded prescription medicines into unknowing and unsuspecting patients in the United States.  An unlicensed, fly-by-night foreign entity, it illegally advertises, imports, markets, sells, and distributes unapproved, unauthorized, and misbranded Allergan-branded prescription medical drugs and devices, including

1  medical devices not approved for use by the United States Food & Drug

2  Administration ("FDA").

3  **A.   Allergan Markets and Manufactures Drugs and Medical Devices**

4      Allergan markets a leading portfolio of branded pharmaceuticals, devices and

5  biologic products for the central nervous system, eye care, medical aesthetics,

6  dermatology, gastroenterology, women's health, urology, and anti-infective therapeutic

7  categories for sale in the United States.  *See* Complaint (Dkt. No. 1), ¶ 12.  Among

8  other products, Allergan has exclusive rights, within the United States, to market

9  BOTOX®,[1] a drug approved by the FDA to treat several very serious medical

10  conditions; BOTOX® Cosmetic, the only FDA-approved treatment to temporarily

11  improve the appearance of both moderate-to-severe frown lines and lateral canthal

12  lines in adults; and the JUVÉDERM®[2] product line, a collection of hyaluronic acid

13  fillers that are used to add volume to different areas of the face.  *Id.*  Allergan has

14  exclusive rights to the BOTOX® and JUVÉDERM® trademarks in the United States.

15  *Id.* ¶ 21.  In its JUVÉDERM® product line, Allergan manufactures JUVÉDERM

16  VOLUMA®[3] XC and JUVÉDERM VOLBELLA®[4] XC, which are Class III medical

17  devices approved by the FDA.  *Id.* ¶¶ 22–23.  For each of its FDA-approved medical

18  devices, Allergan received FDA approval after it filed Premarket Approval

19  applications supported by scientific data demonstrating that the device is safe and

20  effective.  *Id.* ¶ 21.  Allergan also manufactures JUVÉDERM® Ultra 2,

21  JUVÉDERM® Ultra 3, JUVÉDERM® Ultra 4, and JUVÉDERM® Ultra Smile for

22  sale only outside the United States.  *Id.* ¶ 24.  These medical devices have not received

23  required Premarket Approval and are **not** approved by the FDA, and federal law

24

25  ───────────────

26  [1]  Registration Nos. 1692384, 1709160, 1814396, 2510673, 2510675, and 3454647.

27  [2]  Registration Nos. 3463915, 3706974, and 4933963.

    [3]  Registration No. 4481317.

28  [4]  Registration No. 4380507.

prohibits the marketing and sale of these products in the United States. *Id.* ¶¶ 21, 58; *see* 21 U.S.C. §§ 331 (prohibiting the introduction of adulterated devices into interstate commerce), 351(f) (defining as adulterated Class III medical devices which lack required Premarket Approval).

**B.  Amazon Medica Is an Unlicensed Foreign Criminal Entity That Illegally Advertises, Imports, and Sells Prescription Medicines to Unwitting Doctors in the United States**

Amazon Medica is a website operator with a fraudulent business model that sacrifices patient safety in pursuit of unearned profits.  It acquires Allergan-branded products from sources in the United Kingdom and illegally diverts them for sale in the United States. *Id.* ¶ 31.  All of these products bear packaging from the United Kingdom or other countries, as opposed to packaging, labels and warnings required by the FDA for sales to United States consumers, and some of the JUVÉDERM® products it sells to customers in the United States have not been approved for sale in the United States by the FDA. *See id.* ¶¶ 35, 44, 55.  To hide this fact, it has engaged in a sophisticated scam which includes concealing its physical and digital locations.  It has also deceived health care practitioners with its mask of legitimacy by advertising misbranded, adulterated, and potentially dangerous products within the Central District of California. *Id.* ¶¶ 52–53.  Amazon Medica's con has been well-planned and executed, so it is understandable that some reasonable health care practitioners would fall victim to this elaborate scheme.

**1.  Amazon Medica Masquerades as a Legitimate Business**

Amazon Medica has taken active steps to alter its digital footprint and to keep its physical location hidden.  To give itself a veneer of legitimacy, Amazon Medica has purported to have physical office locations in Los Angeles and Singapore, both of which are shams. *Id.* ¶¶ 13, 32.  In addition to providing false addresses, Amazon Medica has taken digital steps to mask its physical location. *Id.* ¶ 33.  For instance, its online IP domain, name servers, original owner, registrant proxy company, IP

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES

Geolocation, and probable website origin indicate physical locations in different countries, including Singapore, the Netherlands, New Zealand, the United States, France, Malaysia, and Luxembourg. *Id.* Discovery within this action revealed that an individual named David Wagenleiter, who listed an address in Malaysia, engaged a privacy services company to help mask Amazon Medica's digital footprint.[5] *See* Greenberg Decl. Ex. A.

### 2. Amazon Medica Makes False and Misleading Statements to Deceive Health Care Practitioners into Thinking the Products It Sells Are FDA-Approved and Legal

Amazon Medica's deceptive marketing campaign was designed to trick United States health care practitioners into thinking that its business model is legal; that the products it sells are under warranty, safe, authentic, and FDA-approved; and that its products are interchangeable with Allergan's FDA-approved products. *See id.* ¶¶ 32, 34–51, 78.

Amazon Medica has falsely advertised that all of the products it sells are FDA-approved when, in fact, several of the JUVÉDERM® products have no such FDA approval. *Id.* ¶¶ 35–36. For example, per the FAQ section of Amazon Medica's webpage: "All products are guaranteed authentic, FDA approved." *Id.* ¶ 35. Further, its homepage prominently displayed the false statement "FDA Approved Products." *Id.*

Amazon Medica has also made false and misleading statements regarding the legality of its products and business model in online videos, voicemail, and email. *Id.* ¶¶ 41–47. For instance, a professional-quality marketing video on Amazon Medica's website falsely claimed that JUVÉDERM® Ultra 3 is lawfully sold in the United

---

[5] Additional third-party discovery revealed that David Wagenleiter was also listed as a point of contact for Amazon Medica's telephone services. *See* Greenberg Decl. Ex. C.

States when, in fact, the sale of the product in the United States is prohibited. *Id.* ¶¶ 41, 43.

Further, in emails to potential clients, Amazon Medica has stated that, "[o]ur business model is legal," and that "parallel imports"—products imported from another country without the permission of the intellectual property owner—are legal under certain circumstances, including that "the product must be FDA approved" and that it "may not be adulterated or misbranded." *Id.* ¶ 48. Amazon Medica fails its own purported legal standard because many of the products it sells are not FDA-approved, and all of the products are both adulterated and misbranded. *See infra Section* I.B.5.

Amazon Medica has also made false and misleading statements claiming to be a licensed and registered company, when in fact, it is neither a licensed wholesaler nor a registered business in the United Kingdom. Complaint (Dkt. No. 1), ¶¶ 37–40.

Amazon Medica has also distributed an incorrect and fraudulent legal opinion concluding that imported BOTOX® would not violate the Food, Drug, and Cosmetic Act ("FDCA") if it was identical, manufactured in Allergan's FDA-approved facility, and had "not been altered in any way." *Id.* ¶¶ 49–51. The BOTOX® Amazon Medica sells violates the FDCA because it is adulterated and misbranded. *Id.* ¶ 50; *see* 21 U.S.C. §§ 351–52. And the purported author of the "legal opinion," an attorney located in Chicago, denied representing Amazon Medica and has asked Amazon Medica to cease distributing the fraudulent document. Complaint (Dkt. No. 1), ¶ 51.

Amazon Medica's marketing materials also claim that "[t]he visual appearance of US or UK Allergan Botox packaging is not of primary concern to the FDA," and that a physician will be insulated from malpractice claims despite purchasing, selling, and administering unapproved, misbranded, and adulterated Allergan-branded products. *Id.* ¶¶ 44–45. The FDA and the Department of Justice have repeatedly taken action against physicians administering misbranded and fraudulent BOTOX® from unlicensed sources. *Id.* ¶ 45. For example, the FDA has sent thousands of warning letters for such violations and some physicians have been sentenced to prison. *Id.*

### 3.     Amazon Medica Markets and Advertises Products to Doctors Within the Central District of California

Amazon Medica targets United States health care practitioners, including those located in the Central District of California.  *Id.* ¶¶ 52–53.

For instance, on April 13, 2016, Vincent Marino (of Amazon Medica) sent Doctor S.T. (of Los Angeles County) a marketing email offering "the possibility of your practice saving 40% on all your cosmetic injectable and dermal filler purchases." *Id.* ¶ 52.  Mr. Marino falsely claimed that Amazon Medica offered "only authentic product[s]," that the "warranties and insurance policies still apply," and that Amazon Medica's "business model is legal and fully licensed."  *Id.*

In another example, on April 8, 2016, Vincent Marino sent a similar marketing email to Dr. T.C. (of Ventura County).  *Id.* ¶ 53.  When Dr. T.C. questioned the legality of Amazon Medica's business, Mr. Marino explained the business model was legal and offered to send him the (fraudulent) "legal opinion."  *Id.*; *see supra* Section I.B.2.

### 4.     Amazon Medica Uses Third Parties to Ship Adulterated and Misbranded Medical Devices and Drugs to the United States

Amazon Medica works with third parties to ship unauthorized products into the United States.  A private investigation firm arranged purchases of Allergan-branded products from Amazon Medica in August 2016 and January 2017.  *See* Collins Decl. (Dkt. No. 19-3) ¶ 3.  With respect to each purchase, the shipping label and customs declaration identified the sender as a third party: Mudan Pharma Ltd., 24B Creek Road, London SE8 3BN, United Kingdom.  *See id.*  The January 2017 purchase also included a commercial invoice, which identified the vendor as Mudan Pharma Ltd., 24B Creek Road, London SE8 3BN, United Kingdom.  *See id.*  The credit card statements of the purchases reflected charges to either Mudan Pharma Ltd., or charges to Rose Pharmacy, which are operated by the same individuals.  *Id.*  The test purchases were shipped into the United States via Parcelforce.  *See id.* ¶ 4; *see* Greenberg Decl.

1   (Dkt. No. 19-1) Ex. G.  Letters of Request issued by this Court demonstrate that since

2   October 2014, Mudan Pharma Ltd. has sent at least 2,866 packages into the United

3   States.  *See* Greenberg Decl. Ex. B.  It is unknown how many other third parties

4   support the shipment of Amazon Medica's unapproved, unauthorized, and misbranded

5   Allergan-branded prescription medical drugs and devices, but the quantity shipped

6   from just one third-party partner is significant.

7       **5.    Amazon Medica Sells Adulterated and Misbranded Medical Devices**

8              **and Drugs Outside of the Licensed Supply Chain That May Be**

9              **Dangerous and Are Used on Unsuspecting Patients**

10          Amazon Medica sells misbranded and adulterated medical devices and drugs to

11  health care practitioners throughout the United States, California, and this District.  In

12  so doing, Amazon Medica is placing patients' safety at risk.  Complaint (Dkt. No. 1)*,*

13  ¶¶ 54–61.  Undoubtedly, patients receiving medical treatment through such products

14  believe they are receiving safe, effective, authentic, authorized, properly stored, FDA-

15  approved products—they are not.  *Id.*

16          The products Amazon Medica sells contain packaging and labels that were not

17  approved by the FDA.  *Id.* ¶¶ 56–57.  Accordingly, these products are misbranded.  *Id.*

18  Amazon Medica's own advertising admits these products do not have United States

19  packaging and labels, but contain packaging developed for another country.  *Id.* ¶ 55.

20  These misbranded products create confusion among health care practitioners and

21  increase the risk to patients.  For example, BOTOX® packaging in the United

22  Kingdom does not include the "black box" warning the FDA deemed essential for

23  patient safety in the United States.  *Id.* ¶¶ 45, 55.

24          In addition to being misbranded, the medical devices and drugs Amazon Medica

25  sells are adulterated.  *Id.* ¶¶ 58–61.  A Class III medical device is adulterated if it lacks

26  a required Premarket Approval, which is based on sufficient scientific evidence and

27  data for the FDA to deem the device safe and effective.  *Id.* ¶ 58; *see* 21 U.S.C.

28  § 351(f).  Several of the JUVÉDERM® products have not received required Premarket

Approval and are not FDA-approved.  Complaint (Dkt. No. 1), ¶ 58.  Thus, these medical devices are adulterated.  *Id.*

Further, medical devices and drugs are also considered adulterated when they are not stored and packed in conformity with applicable requirements, or are stored in a manner that may render them injurious to health.  *Id.* ¶ 59; *see* 21 U.S.C. § 351(a), (h).  Allergan's BOTOX® has strict restrictions on storage temperature.  Complaint (Dkt. No. 1), ¶ 59.  Allergan goes to great lengths to make certain that, from the time of manufacture until the time the product reaches its customers, the temperature of BOTOX® is properly maintained in special, validated, temperature-controlled containers.  *Id.*  Maintaining the temperature is crucial for ensuring that the product is both safe and effective at the time it is administered to patients.  *Id.*

Although Amazon Medica has claimed it ships products at the proper temperature, its claims cannot be trusted, as demonstrated herein.  *Id.* ¶ 60; *see generally supra* Section I.B.  In fact, it makes this very claim within the same sentence as four other false statements: "All products are guaranteed authentic, FDA approved, and shipped at the appropriate temperature, can be verified by the client and with Allergan Pharmaceuticals Ireland."  Complaint (Dkt. No. 1), ¶ 60.  Not one of these claims is true.  *Id.*  There is no evidence that Amazon Medica properly ships Allergan-branded products, and Allergan has never validated Amazon Medica's storage and shipping configurations.  *Id.*  Accordingly, these products are adulterated and are a risk to patient safety.  *Id.*

As a result of Defendant's illegal conduct, Allergan has suffered, suffers, and will continue to suffer irreparable harm to its reputation, business, and goodwill.  *Id.* ¶ 61.  Further, Defendant's illegal operations pose a significant risk to thousands of unsuspecting patients and, accordingly, to Allergan itself.  *Id.*

## II.    DISCUSSION

### A.    Allergan Has Satisfied Local Rule 55-1

Local Rule 55-1 for the Central District of California requires that an application to the Court for a default judgment be accompanied by a declaration of compliance with Fed. R. Civ. P. 55(b).  Allergan has satisfied the statutory requirements by accompanying its Motion with a sworn declaration of compliance with Fed. R. Civ. P. 55(b)(2) stating that (a) On March 19, 2018, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the Clerk of Court entered the default of Amazon Medica (Dkt. No. 32); (b) the default was entered for Amazon Medica's failure to plead or otherwise defend Allergan's Complaint; (c) on information and belief, Amazon Medica is not an infant or incompetent person; (d) on information and belief, the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (e) Rule 55(b)(2) does not require that notice be served on Amazon Medica because it never appeared personally or by representative.  *See* Greenberg Decl. ¶ 5.  Thus, Allergan has satisfied Local Rule 55-1.

### B.    Ninth Circuit *Eitel* Factors Strongly Favor Entering Default Judgment

Under Fed. R. Civ. P. 55, the entry of a default judgment is a two-part process. First, when a defendant fails to plead or otherwise defend, the Clerk must enter the defendant's default.  Fed. R. Civ. P. 55(a).

Second, the plaintiff may apply to the court for a default judgment, which the Court has the discretion to grant or deny.  In the Ninth Circuit, a district court must examine the following factors on a motion for default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72

(9th Cir. 1986) (citations omitted).  Here, the enumerated factors weigh heavily in favor of granting default judgment.

### 1.    Possibility of Prejudice to Allergan

"The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered."  *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (citation omitted).  If denying default judgment would leave a plaintiff without a proper remedy, prejudice can be shown.  *Id.*  Here, Allergan would suffer prejudice if the default judgment were not entered because Allergan would be without any other recourse for recovery.

### 2.    Substantive Merits and Sufficiency of the Complaint

The next two *Eitel* factors require Allergan to have "state[d] a claim on which [it] may recover" and examine Allergan's likelihood of success on the merits. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175–76 (C.D. Cal. 2002) (citation omitted) (conducting an analysis of the merits and sufficiency of plaintiff's unfair competition, dilution, false advertising, and trademark claims).

"In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default." *Bd. of Trs. of Sheet Metal Workers v. Moak*, No. C 11-4620 CW, 2012 WL 5379565, at *2 (N.D. Cal. Oct. 31, 2012) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(d)).  Amazon Medica has defaulted, and Allergan's Complaint alleges facts which, taken as true, provide a sufficient legal basis for entry of a default judgment, as it properly alleges the necessary elements for each cause of action.  Below is an analysis of each claim in turn.

### a.    False Advertising and Unfair Competition under Lanham Act § 43(a), 15 U.S.C. § 1125

Section 43(a) of the Lanham Act prohibits the "use[] in commerce [of] any . . . false or misleading description of fact, or false or misleading representation of fact,

which . . . misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1).

Specifically, but not exclusively:

i      Amazon Medica misleads customers and falsely advertises that the Allergan-branded products it sells are FDA-approved (*see supra* Section I.B);

ii     Amazon Medica misleads customers, through false advertising and a fraudulent "legal opinion," into believing its business model is legitimate and it follows United States laws and regulations (*id.*);

iii    Amazon Medica misleads customers into believing its business has the appropriate licenses that would provide oversight to ensure patient safety (*id.*);

iv    Amazon Medica misleads customers into believing that the Allergan-branded products it sells are safe and not adulterated (*id.*);

v     Amazon Medica misleads and creates confusion among health care practitioners by providing mislabeled Allergan-branded products (*id.*);

vi    Amazon Medica misleads customers into believing that the Allergan-branded products it sells are under warranty (*id.*); and

vii   Amazon Medica misleads customers as to its physical location by providing phony office addresses in California and Singapore.  *Id.*

These statements are false and misleading and misrepresent the nature, characteristics, qualities, and/or geographic origin of Allergan's products.  *Id.*  Thus, in its marketing, advertising, importing, distributing, and selling of non-FDA-approved Allergan-branded products—and unauthorized Allergan-branded products—Amazon Medica has engaged in, and continues to engage in, false advertising and unfair competition in violation of Section 43(a) of the Lanham Act.

**b.**   **Trademark Infringement under Lanham Act § 43(a), 15 U.S.C. §§ 1114, 1125**

The Lanham Act also prohibits trademark infringement through the sale of products that are materially different from the genuine products for sale in the United States. *See* 15 U.S.C. §§ 1114, 1125. Amazon Medica sells Allergan-branded products that are manufactured overseas, bear a valid United States trademark, and are imported without the consent of the United States trademark holder (Allergan). The Allergan-branded products Amazon Medica imports into the United States are materially different due to the improper labeling, packaging, marketing, and quality control methods, such as proper storage and shipping temperatures. S*ee supra* Section I.B.

These materially different medical devices and drugs have the potential to cause confusion among United States health care providers and patients who believe they have received, or will receive, genuine authorized Allergan-branded products, and to cause significant patient harm. Because these products are materially different from the genuine products for sale in the United States, they constitute trademark infringement under Section 43(a) of the Lanham Act.

**c.**   **Unfair Competition under CAL. BUS. & PROF. CODE § 17200 *et seq.***

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

Defendant's unlawful actions include violations of California statutory law. Specifically, but not exclusively, these unlawful actions are:

i      selling unapproved medical devices (*see supra* Section I.B);

ii     selling misbranded drugs and medical devices (*id.*);

iii    selling adulterated drugs and medical devices (*id.*);

iv     false and misleading advertising of drugs and medical devices (*id.*);

Gibson, Dunn & Crutcher LLP

v       advertising adulterated drugs and medical devices (*id.*);

vi      advertising misbranded drugs and devices (*id.*); and

vii     selling drugs and devices outside of the licensed supply chain (*id.*).

In its marketing, importing, distributing, and selling of non-FDA-approved Allergan-branded products and unauthorized Allergan-branded products, Amazon Medica has engaged in, and continues to engage in, unlawful, unfair, and/or fraudulent business acts, as well as unfair, deceptive, untrue, or misleading advertising in violation of the UCL.  *See* CAL. BUS. & PROF. CODE § 17200 *et seq.*; *see supra* Section I.B.

### d.      False Advertising under CAL. BUS. & PROF. CODE § 17500 *et seq.*

The UCL also prohibits "untrue or misleading" advertising, "including over the internet." CAL. BUS. & PROF. CODE § 17500 *et seq.*  In its marketing and advertising of non-FDA-approved Allergan-branded products and unauthorized Allergan-branded products, Amazon Medica has engaged in, and continues to engage in, untrue or misleading advertising.  Amazon Medica's advertising is false or misleading because it advertises that the products it sells are FDA-approved, safe, not adulterated, under warranty, and properly shipped and stored; that it follows laws and regulations; that its business model is legal; that it has the appropriate licenses; and that it has an office located at 50 Raffles Place, #30.00 Singapore Land Tower, 048623, Singapore, and a satellite office located at 445 S. Figueroa Street, Los Angeles, California.  *See supra* Section I.B.  All of these claims are false or misleading, and none of them are true.

### e.      California Common Law Tort of Intentional Interference with Prospective Economic Advantage

In California, "the elements of the tort of intentional interference with prospective economic advantage are [1] an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; [2] the defendant's knowledge of the existence of the relationship; [3] the defendant's

1    intentional acts designed to disrupt the relationship; [4] actual disruption of the

2    relationship; and [5] economic harm to the plaintiff proximately caused by the

3    defendant's acts." 40 CAL. JUR. 3D INTERFERENCE WITH ECONOMIC ADVANTAGE § 9

4    (footnote omitted).

5          Amazon Medica has intentionally diverted business from Allergan by improper

6    means not within the boundaries of fair competition. *See supra* Sections I.B, II.B.2.a–

7    II.B.2.d. Through false and misleading advertising, Defendant convinced some health

8    care practitioners that the products Amazon Medica sells are FDA-approved, safe,

9    effective, legal and interchangeable with authorized Allergan-branded products. *See*

10   *supra* Section I.B. Amazon Medica knew that these were prospective Allergan

11   customers and intended to capitalize on this prospective business relationship.

12   Accordingly, some health care practitioners bought products from Amazon Medica

13   rather than Allergan, causing economic harm to Allergan.

14                  **f.      Conclusion as to the Second and Third *Eitel* Factors**

15         Thus, taking the facts in Allergan's Complaint as true, Amazon Medica's illicit

16   operations violate the above federal and state laws due to its advertising, false

17   advertising, importing, selling, and distributing of unapproved, unauthorized,

18   adulterated, and/or misbranded Allergan-branded products. Thus, there is a sufficient

19   legal basis for entry of a default judgment, and the second and third *Eitel* factors weigh

20   in favor of entering default judgment.

21                  **3.      Amount at Stake**

22         For the fourth *Eitel* factor, the Court balances "the amount of money at stake in

23   relation to the seriousness of the [defaulting party's] conduct." *PepsiCo Inc.*, 238 F.

24   Supp. 2d at 1176; *see Eitel*, 782 F.2d at 1471–72. Allergan seeks only non-monetary

25   damages in the form of injunctive relief. Thus, there is no money at stake in this

26   Motion. Non-monetary damages favor granting a default judgment, *PepsiCo*, 238 F.

27   Supp. 2d at 1177, so the fourth *Eitel* factor weighs in favor of Allergan.

28

### 4.      Possibility of Dispute

For the fifth *Eitel* factor, the Court considers the possibility that material facts would be disputed. *Id.*; *see also Eitel*, 782 F.2d at 1471–72. "Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) (citing *Landstar Ranger*, 725 F. Supp. 2d at 921–22 ("Since [plaintiff] has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment.")). As explained in Section II.B.2, Allergan adequately alleges its claims for unfair competition, false or misleading advertising, and trademark infringement. Thus, a dispute concerning the material facts as to these claims is unlikely and the fifth *Eitel* factor weighs in favor of Allergan.

### 5.      Possibility of Excusable Neglect

"The sixth *Eitel* factor considers whether defendant's default may have been the product of excusable neglect." *Landstar Ranger*, 725 F. Supp. 2d at 922 (citations omitted). On November 23, 2016, Allergan filed a Motion for Alternative Service to permit the Complaint and other case-related documents to be served on four known Amazon Medica email addresses (Dkt. No. 12), and on December 12, 2016, the Court granted this motion (Dkt. No. 15). Amazon Medica was properly served (Dkt. No. 19-9) and failed to answer, plead, or otherwise respond to the Complaint (Dkt. No. 1). The possibility of Amazon Medica's excusable neglect is therefore unlikely, and the sixth *Eitel* factor weighs in favor of entering default judgment.

### 6.      Policy for Deciding Cases on the Merits

"The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (citation omitted). Although "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472 (citation omitted), "Rule 55(a) allows a court to decide a case

before the merits are heard if defendant fails to appear and defend." *Landstar Ranger*, 725 F. Supp. 2d at 922 (citing *PepsiCo*, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer plaintiff's complaint makes a decision on the merits impractical, if not impossible.")).  Here, Amazon Medica has failed to appear and respond.  Thus, the strong policy favoring deciding cases on the merits does not prevent the Court from entering a default judgment here.

### 7.    Conclusion as to the *Eitel* Factors

In sum, the *Eitel* factors weigh heavily in favor of the entry of default judgment as to Allergan's claims for unfair competition, false or misleading advertising, and trademark infringement.

## C.    This Court Should Permanently Enjoin Defendant from Future Infringement of Allergan's Trademarks, Further Acts of Unfair Competition, and Further Acts of False or Misleading Advertising

Allergan is entitled to a permanent injunction to prevent Amazon Medica from future infringement of Allergan's trademarks, further acts of unfair competition, and further acts of false or misleading advertising.

Specifically, Allergan seeks a permanent injunction barring Amazon Medica from:

1) further use of Allergan's trademarks (or any reproduction, counterfeit, copy, or colorable imitation of Allergan's trademarks) on products that are materially different from the genuine Allergan products for sale in the United States; and from

2) advertising, importing, marketing, selling, or distributing unapproved, unauthorized, or misbranded Allergan-branded prescription medical drugs and devices in the United States.

### 1.    A Permanent Injunction Is an Available Equitable Remedy

Injunctive relief is an appropriate remedy in a default judgment.  *See Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1057 (C.D. Cal. 2011) ("Because Defendant has failed to respond to the Complaint, it is not possible to

determine with certainty whether Defendant is continuing to sell the infringing products . . . without the Court's issuance of an injunction, the continued sale . . . will result in lost sales to [plaintiff] and would damage the goodwill in which [plaintiff] has greatly invested."); *see also Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease.  Therefore, plaintiff is entitled to permanent injunctive relief.").

The Lanham Act allows the issuance of a permanent injunction barring the violation of any right of a trademark holder registered in the Patent and Trademark Office.  15 U.S.C. § 1116(a).  Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1998).  Allergan's registered trademarks include BOTOX® — Registration Nos. 1692384, 1709160, 1814396, 2510673, 2510675, and 3454647; JUVÉDERM® — Registration Nos. 3463915, 3706974, and 4933963; JUVÉDERM VOLUMA® — Registration No. 4481317; and JUVÉDERM VOLBELLA® — Registration No. 4380507.

In addition, the California Business & Professions Code states that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined" from doing so.  CAL. BUS. & PROF. CODE § 17203.  Further, "[a]ny person, corporation, firm, partnership, joint stock company, or any other association or organization which violates or proposes to violate" Sections 17500–06 of the Code "may be enjoined" from doing so.  *Id.* § 17535.  Under the California common law, injunctive relief is also an available remedy for unjustified interference with contractual relations.  *See* 40 CAL. JUR. 3D INTERFERENCE WITH ECONOMIC ADVANTAGE § 45 (citations omitted).

### 2.   The *eBay* Test Is Satisfied

A Court may grant a permanent injunction if the plaintiff satisfies a four-factor test. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006); *see also China Cent. Television v. Create New Tech. (Hk) Ltd.*, No. CV 15-01869 MMM AJWX, 2016 WL 6871281, at *7 (C.D. Cal. Apr. 4, 2016) (citing *Reno Air Racing Ass'n. Inc. v. McCord*, 452 F.3d 1126, 1137–38 (9th Cir. 2006) (applying "traditional equitable principles" under *eBay* in deciding whether entry of a permanent injunction in a trademark case was appropriate)).

Specifically, a plaintiff seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury;" (2) that there is no adequate remedy at law; (3) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391.  Allergan has satisfied each of these factors.

### a.   Irreparable Injury

"[W]hen a plaintiff establishes in a trademark infringement or unfair competition action a likelihood of confusion, it is generally presumed that the plaintiff will suffer irreparable harm if an injunction is not granted." *Otter Prods., LLC v. Berrios*, No. CV 13-4384-RSWL (AGRX), 2013 WL 5575070, at *11 (C.D. Cal. Oct. 10, 2013) (citations omitted).  Furthermore, "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) (citation omitted).

As discussed above, Allergan's Complaint demonstrates a likelihood of confusion as to the origin of the unapproved, unauthorized, adulterated, and misbranded Allergan-branded products sold by Amazon Medica.  Furthermore, Allergan has suffered, suffers, and will continue to suffer irreparable harm to its reputation, business, and goodwill because of Amazon Medica's illegal operations.

1

### b.     Availability of Remedy at Law

2       "Damage to reputation and loss of customers are intangible harms not

3    adequately compensable through monetary damages." *Car-Freshner Corp. v. Valio,*

4    *LLC*, No. 2:14-cv-01471-RFB-GWF, 2016 WL 7246073, at *8 (D. Nev. Dec. 15,

5    2016).  Unless enjoined, Amazon Medica will continue to market, advertise, import,

6    distribute, and sell unapproved, unauthorized, adulterated, and misbranded Allergan-

7    branded products.  This will create consumer confusion and harm Allergan's

8    reputation, business, and goodwill. *See Wecosign, Inc.*, 845 F. Supp. 2d at 1084 ("[I]f

9    an injunction were not granted, plaintiff would suffer irreparable injury from the

10   ongoing damages to its goodwill and diversion of customers.").

11

### c.     Balance of Hardships

12      Furthermore, "the balance of hardships favors Plaintiff because without an

13   injunction, Plaintiff will lose [customers,] profits and goodwill, while an injunction

14   will only proscribe Defendant's infringing activities." *See id.*  There is no indication

15   that Amazon Medica will suffer hardship if a permanent injunction is entered, as it can

16   continue its business without use of unapproved, unauthorized, adulterated, and

17   misbranded Allergan-branded products; and without marketing, advertising, importing,

18   distributing, and selling of non-FDA-approved Allergan-branded products and/or

19   unauthorized Allergan-branded products.

20

### d.     Public Interest

21      Finally, an injunction in this case is in the interest of the public because "[t]he

22   public has an interest in avoiding confusion between two companies' products."

23   *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5

24   (9th Cir. 2009).  "Where defendant's concurrent use of plaintiff's trademark without

25   authorization is likely to cause confusion, the public interest is damaged by the

26   defendant's use." *AT&T Corp. v. Vision One Sec. Sys.*, No. 95-0565-IEG (BTM), 1995

27   WL 476251, at *7 (S.D. Cal. Jul. 27, 1995).  Unless enjoined, Amazon Medica will

28   continue to infringe Allergan's trademarks and to market, advertise, import, distribute,

and sell unapproved, unauthorized, adulterated, and misbranded Allergan-branded products.  This is likely to cause consumer confusion, which is against the public interest.

Therefore, Allergan satisfies the *eBay* test and has met the statutory and equitable requirements for permanent injunctive relief.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff Allergan respectfully requests the Court grant its motion for entry of default judgment in its favor against defendant Amazon Medica and enter a permanent injunction against Amazon Medica restraining it from engaging in further acts of unfair competition, false or misleading advertising, and infringement or dilution of Allergan's trademarks, and restraining third parties from assisting, aiding, or abetting Amazon Medica's illegal activities.

Dated:  June 21, 2018

DEBRA WONG YANG
JARED GREENBERG
GIBSON, DUNN & CRUTCHER LLP

By:   */s/ Jared Greenberg*
Jared Greenberg

Attorneys for Plaintiffs ALLERGAN, INC. and ALLERGAN USA, INC.

102502811.9

Gibson, Dunn & Crutcher LLP

20

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES